**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**TALLMAN TAYLOR,**

      **Plaintiff,**

v.                                                             **No. 2:07cv32**

**COMMISSIONER,
Social Security Administration,**

      **Defendant.**

## OPINION & ORDER

Tallman Taylor ("claimant" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). Plaintiff seeks judicial review of the Commissioner of Social Security's ("Commissioner" or "Defendant") January 25, 2005 decision denying Plaintiff's application for disability insurance benefits (DIB). Doc. 6. Plaintiff moved for summary judgment on July 13, 2007. Doc. 17. Defendant moved for summary judgment on August 13, 2007. Doc. 20. The motions and attendant pleadings were referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Doc. 13. The Magistrate Judge issued his Report and Recommendation ("R&R") on February 20, 2008. Doc. 23. Defendant filed a timely objection to the R&R on March 5, 2008. Doc. 24. Plaintiff responded to this objection on March 18, 2008. Doc. 25. This matter is therefore ripe for decision by the Court.

The Commissioner raises several objections to the substantive findings of the R&R. Doc. 24. First, the Commissioner objects to the Magistrate Judge's application of the standard of review. Id. at 2. Second, the Commissioner objects to the Magistrate Judge's finding that

Plaintiff's headaches were a "severe impairment." Id. at 2-3. Third, the Commissioner objects to the Magistrate Judge's finding that the Administrative Law Judge's ("ALJ") evaluation of medical source opinions was incorrect. Id. at 4-5. Fourth, the Commissioner objects to the Magistrate Judge's findings regarding the Plaintiff's subjective complaints of pain. Id. at 6-7. Fifth, the Commissioner objects to the Magistrate Judge's determination that Plaintiff cannot perform any work available in the national economy. Id. at 8.

The Court **FINDS** that the ALJ's disability determination is supported by substantial evidence. Thus, the Court thus will not adopt the Magistrate Judge's substantive recommendations. The Court instead sustains the Commissioner's objections to the R&R and **GRANTS** the Commissioner's Motion for Summary Judgment. The Plaintiff's Motion for Summary Judgment is **DENIED**.

## I. FACTUAL BACKGROUND[1]

At the time of his alleged onset of disability date, Plaintiff was a forty-three (43) year old man who was self-employed as the owner of a general construction company. Doc. 23 at 2; R. at 68, 449. Plaintiff stopped this work in December 2001 due to kidney stones and a hip injury. Doc. 23 at 2; R. at 449. He alleges that he became disabled in on April 1, 2002 and never returned to work. R. at 54. Plaintiff alleges that he is disabled due to severe headaches, chronic pain, insomnia, depression, kidney stones, and breathing problems. R. at 67. Plaintiff alleges that his disability was triggered by an accident where he fell from the roof of his shed and broke his

---

[1] This history does not reflect the complete procedural and factual history as to Plaintiff, but only those proceedings and facts relevant to the present objections. The Court accepts as fact the procedural history and factual background set forth by the Magistrate Judge in his Report and Recommendation, insofar as they are not objected to by Defendant. See 28 U.S.C.A. § 636(b)(1); Owens ex rel. Metcalf v. Barnhart, 2006 WL 2384706, *1 (D.S.C. 2006).

right leg on April 27, 2002. Doc. 23 at 2; R. at 67. The accident caused neck, leg, and back pain, and Plaintiff underwent surgery directly after the accident.[2] R. at 112. After the surgery, Plaintiff continued to complain of neck, shoulder, back, and leg pain, as well as occasional numbness in his upper extremities. R. at 112, 151, 173, 189. Plaintiff also started complaining of severe headaches. R. at 125, 143. Plaintiff alleges that this pain continued until his hearing before the ALJ. The medical records indicate that Plaintiff has received extensive treatment for his pain through the Center for Pain Management. R. at 296-422. Plaintiff also underwent surgery in September, 2003 to help alleviate the pain in his neck and arm. R. at 234. Plaintiff has also been treated for depression, anxiety, and insomnia, conditions that began around the time of his accident. R at 213, 230, 249, 358. These conditions also continued until Plaintiff's hearing before the ALJ.

At the hearing, Plaintiff stated that he continues to have pain in his neck and shoulders and that this pain interferes with his sleep. R. at 452-53. Plaintiff further stated that the surgery on his neck did not improve his pain, and that his feet and hands sometimes go numb. R. at 451-52. These statements contradicted statements Plaintiff made directly after the surgery. R. at 249, 286-88. Plaintiff further stated at the hearing that he has had headaches for three (3) years and that he cannot concentrate. R. at 456. He stated that he cannot stand for long periods of time. R. at 452. He stated that he is depressed and has difficulties relating to other people. R. at 452-53. He stated that he occasionally takes his son to pre-school, takes short walks, and does some work around the house. R. at 450-51, 455. He stated that he otherwise rarely leaves his home except

---

[2] Even before the accident, Plaintiff suffered from pain due to a fall sustained after he slipped on one of his son's toys. R. at 449.

for occasional visits to his mother and the grocery store. R. at 451.

Subsequent to filing his claim for DIB, three (3) of Plaintiff's treating physicians completed Residual Functional Capacity Assessments for Plaintiff.[3] In November, 2003 Dr. Mark Kerner, who completed Plaintiff's surgery in September 2003, completed an evaluation indicating that Plaintiff's pain would continue for at least twelve (12) months and was contributed to by Plaintiff's depression and anxiety. R. at 240. Dr. Kerner additionally stated that Plaintiff's pain would constantly interfere with the attention and concentration needed to complete even simple work tasks; that Plaintiff could sit for up to twenty (20) minutes and stand for up to ten (10) minutes; that Plaintiff could never crouch, climb ladders, or climb stairs and could rarely twist or stoop; and that Plaintiff had significant limitations reaching, handling, and fingering. R. at 240-42. Dr. Kerner also noted that Plaintiff's medication for his pain, morphine, would further interfere with his ability to work. R. at 241. Dr. Kerner concluded that Plaintiff was unable to hold even a low stress job. R. at 241. Plaintiff's psychiatrist, Dr. Norbert L. Newfield, from whom Plaintiff sought treatment for his depression, also completed an evaluation in November 2003. R. at 245. Dr. Newfield noted that Plaintiff was moderately limited in several areas and markedly limited in his ability to understand and remember detailed instructions; his ability to carry out detailed instructions; his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual; his ability to work in coordination with or proximity to others without being distracted; his ability to complete a normal work day and work week without interruptions from

---

[3] Although several doctors treated Plaintiff during the recovery from his accident, these three (3) physicians were the only treating physicians who completed Residual Functional Capacity Assessments.

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; his ability to interact appropriately with the general public; his ability to accept instructions and respond appropriately to criticism; his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and his ability to respond appropriately to changes in work setting. R. at 245-46. A third Doctor who treated Plaintiff for pain, Dr. Robert Hansen, evaluated Plaintiff in October, 2004. R. at 373. Dr. Hansen found that Plaintiff had chronic pain and muscle spasms, and that Plaintiff's medication only controlled 50% of his pain. R. at 373. Dr. Hansen did not evaluate Plaintiff's abilities as far as sitting, standing, lifting, and walking, as Dr. Hansen felt that such evaluation was better completed "in a physical therapy venue." R. at 372.

Three (3) Disability Determination Services (DDS) Doctors also completed Residual Functional Capacity Assessments for Plaintiff. Dr. Michael Cole, an osteopath, evaluated Plaintiff in July, 2003, prior to Plaintiff's second surgery, and concluded that Plaintiff could lift or carry up to fifty (50) pounds; could stand, walk, or sit six (6) hours with normal breaks during an eight (8) hour work day; and had no postural, manipulative, visual, communicative, or environmental limitations other than the need to avoid fumes. R. at 222-29. Dr. Daniel Walter, a psychiatrist, completed his evaluation in December 2003. R. at 261. Dr. Walter concluded that Plaintiff had major depression and generalized anxiety disorder; moderate difficulty in maintaining concentration, persistence, or pace; and moderate limitations in understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, setting realistic goals and making plans independently of others, and completing a normal work day and work week without interruption. R. at 261-77. Dr.

Walter also stated that Plaintiff's mental impairments did not prevent him from doing simple and routine work activity. R. at 277. Dr. Carolina B. Longa completed a physical evaluation in December, 2003 where she concluded that Plaintiff could lift or carry up to fifty (50) pounds; could sit, stand, or walk six (6) hours out of an eight (8) hour workday; and could climb, stoop, and crouch occasionally. R. at 278-85. Dr. Longa found that Plaintiff's medical records contradicted his and Dr. Kerner's statements of Plaintiff's physical limitations, and thus found that Plaintiff's symptoms were not fully credible. R. at 284. In fact, many of the conclusions reached by the DDS doctors contradicted the findings of Plaintiff's treating physicians who completed evaluations.

## II. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and disability on January 10, 2003. R. at 54. Plaintiff alleges that he became disabled on April 1, 2002 due to a degenerative disk disease of the lumbar and cervical spine, insomnia, headaches, kidney pain/stones, difficult breathing, depression, and chronic pain. Id. Plaintiff's applications were denied initially and on reconsideration. R. at 32, 42. Plaintiff filed a request for a hearing, and such a hearing was conducted on November 30, 2004. R. at 17. Plaintiff was represented by counsel. Id. At the hearing, both Plaintiff and a vocational expert testified as to the extent of Plaintiff's injuries, his daily activities, and his ability to retain employment. Doc. 23 at 1-2; R. at 446. The ALJ asked the vocational expert if an individual of Plaintiff's age, education, and prior work experience who was limited to light and/or sedentary work that would not involve crawling or climbing; would only involve occasional stooping, kneeling, crouching, or balancing; and who could only carry out simple instructions and simple tasks in an environment where there would be few changes could perform jobs available in

the national economy. R. at 458. The vocational expert stated that such an individual could work as a laundry sorter or a food and beverage clerk. Id. These positions are full time and require being present at designated times without unscheduled breaks. Id. at 459.

On January 25, 2005 the ALJ denied Plaintiff's claim for DIB. R. at 17. Plaintiff requested review of this decision on February 3, 2005. R. at 13. The Appeals Council of the Office of Disability Adjudication and Review denied the appeal on November 15, 2006. R. at 6. Plaintiff then filed the present action on November 1, 2006 seeking review of this decision. Doc. 6 (Complaint). The case was referred to the Magistrate Judge for the purpose of conducting hearings and preparing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Local Rule 72. Doc. 13. Plaintiff filed his Motion for Summary Judgment on July 13, 2007. Docs. 17 (Motion) and 18 (Mem. in Support). Plaintiff prayed that the Court direct entry of an award of DIB in his favor or, in the alternative, remand the case for further proceedings. Doc. 17 at 1. Defendant filed his Motion for Summary Judgment on August 13, 2007. Docs. 19 (Motion) and 20 (Mem. in Support). Defendant requested that the Court affirm the decision of the ALJ. Doc. 20 at 22. On February 20, 2008 the Magistrate Judge recommended that Plaintiff's Motion for Summary Judgment be granted, Defendant's Motion for Summary Judgment be denied, and that the case be remanded to the Commissioner for "further consideration in accordance with the opinions herein expressed." Doc. 23 at 42 (R&R).

### III. STANDARD OF REVIEW

## A. Review of the Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the Court. Owens ex rel. Metcalf v. Barnhart, No. 8:04-2351-PMD-BHH, 2006 WL 2384706 *1 (D.S.C. Feb. 14, 2006) (citing Mathews v. Weber, 423 U.S. 261, 269 (1976)). In a Social Security disability benefits case, the Court reviews de novo those portions of the R&R to which specific objection is made, and may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C.A. § 636(b)(1); Owens, 2006 WL 2384706 *1.

## B. Review of the Commissioner's Final Decision

The role of the Court in the administrative scheme established by the Social Security Act (the "Act") is a limited one. The Court's review is restricted to a determination as to whether there is substantial evidence to support the ALJ's conclusion that the plaintiff failed to meet the conditions for entitlement pursuant to the Act. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996). Substantial evidence is "more than a mere scintilla" of evidence, but only such evidence "as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Craig, 76 F.3d at 589. Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether the

claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson, 402 U.S. at 401. If substantial evidence exists for the ALJ's findings, and those findings were reached through application of the correct legal standard, the conclusion must be affirmed. Craig, 76 F.3d at 589; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

Under Gordon v. Schweiker, a denial of benefits is not supported by substantial evidence if the ALJ "has not analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative" evidence. 725 F.2d 231, 236 (4th Cir. 1984). The ALJ must "present [the Court] with findings and determinations sufficiently articulated to permit meaningful judicial review." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

### C. Entitlement to Disability Benefits

In evaluating whether a claimant is entitled to disability benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. Under the regulations, an ALJ must consider, in sequence, whether a claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that meets or equals a condition contained within the Act's official listing of impairments, (4) has an impairment which prevents past relevant work, and (5) if not, has an impairment that prevents him from any substantial gainful employment. 20 C.F.R. §§ 404.1520 and 416.920. An affirmative answer to question one, or negative answers to questions two or four, results in a determination of no disability. Id. Affirmative answers to questions three and five establish disability. Id. The claimant bears the burden of production and proof during the first four steps of the inquiry. See

Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) (per curiam). If the claimant can carry his burden through the fourth step, the burden shifts to the Commissioner to show that other work is available in the national economy that the claimant can perform despite his condition. See id.

## IV. ANALYSIS

### A. The Magistrate Judge's Application of the Standard of Review

The Commissioner first objects to the Magistrate Judge's application of the standard of review. Doc. 24 at 2. The Commissioner states that "there are numerous places in the Magistrate Judge's R&R that incorrectly suggest that it is the Court's duty to make findings of fact." Id. A review of the R&R, however, reveals that the Magistrate Judge correctly stated the standard of review applicable in actions brought pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). See Doc. 23 at 22-23. The Court will not, therefore, refuse to adopt the R&R based on this objection alone. Instead, the Court will analyze whether the Magistrate Judge correctly applied this standard of review to the ALJ's decision that Plaintiff was not entitled to DIB.

The Magistrate Judge found that the ALJ's decisions at step one, step three, and step four were supported by substantial evidence. The Magistrate Judge found that the ALJ's decisions at steps two and five of the analysis were not supported by substantial evidence. At step one, the Magistrate Judge agreed with the ALJ that Plaintiff had not been engaged in substantial gainful activity. Doc. 23 at 25. The Magistrate Judge found that at step two, the ALJ's decision that Plaintiff's headaches were not a severe impairment was incorrect. Id. at 29. The Magistrate Judge thus considered Plaintiffs's headaches to be a severe impairment while proceeding with the rest of the analysis. See id. at 30. At step three, the Magistrate Judge disagreed with how the ALJ reached the decision that Plaintiff does not suffer from an

impairment or combination of impairments that meets or equals one found in the listings. Id. at 34-36. Ultimately, however, the Magistrate Judge deferred to the ALJ at this step, and recommended upholding the ALJ's decision at step three. Id. at 36. The Magistrate Judge also agreed with the ALJ's findings at step four, where the ALJ determined that Plaintiff is unable to perform his past relevant work of construction work. Id. at 37. At step five, the Magistrate Judge disagreed with the ALJ's finding that there were no jobs existing in significant numbers in the national economy that Plaintiff could perform. Id. at 39. The Magistrate Judge found that the Plaintiff's claim that "he would not be physically or mentally able to fulfill the requirements of [these] jobs" was supported by the record, in that Plaintiff could not work at a job that required a full work week and did not allow for unscheduled breaks. Id. at 39-40.

Although the Magistrate Judge disagreed with the ALJ's analysis at step three, the Magistrate Judge only recommended remanding the case for further proceedings as to steps two and five of the analysis. Thus, the Court will only examine the Commissioner's objections to the Magistrate Judge's recommendations at these two steps.

### B. Step Two: The Magistrate Judge's Finding that Plaintiff's Headaches were a "Severe Impairment"

An impairment is "severe" "if it significantly limits an individual's physical or mental abilities to do basic work activities." SSR 96-3P (July 2, 1996). Pain, as a symptom, "will not be found to affect an individual's ability to do basic work unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s), and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." Id.

The record indicates that doctors considered several causes of Plaintiff's severe headaches, including his medication, tension, and his accident. However, the record does not indicate that any diagnosis as to the cause of the headaches was ever made. Plaintiff makes much of Dr. Hanson's evaluation, claiming that Dr. Hanson found "muscle spasms" to be the cause of Plaintiff's headaches. Doc. 18 at 10; Doc. 25 at 2. A look at this document, however, reveals that Dr. Hanson listed Plaintiff's symptoms as "chronic head pain & chronic neck/shoulder pain" and then, in response to a question stating "Identify the clinical findings and objective signs," Dr. Hansen wrote "spasm in muscles." R. at 373. It is unclear from this document whether these "spasms in muscles" caused the head pain, the neck and shoulder pain, both, or neither. The record thus does not indicate a "determinable physical or mental impairment" that was the cause of the headaches. It appears to the Court from a review of the record that the headaches could be related to any number of Plaintiff's medical conditions. In addition, there is conflicting evidence in the record as to the severity of Plaintiff's headaches. The Magistrate Judge noted this conflict in his R&R. Doc. 23 at 36.

The Court thus cannot say that the ALJ's finding as to whether the headaches were a severe impairment is not supported by substantial evidence. The Court notes that under the applicable standard of review, where the evidence in the record is conflicting, the decision as to disability rests with the Commissioner. Craig, 76 F.3d at 589. There is substantial evidence in the record to support a finding that the headaches were not a severe impairment. The Court therefore **FINDS** that the ALJ's decision at step two is supported by substantial evidence, and sustains the Commissioner's objection to this part of the R&R..

**C. Step Five: The Magistrate Judge's Finding That There was no Work Plaintiff Could**

**Perform in the National Economy**

The Commissioner argues that the Magistrate Judge erred at step five by determining that there were no jobs existing in significant numbers in the national economy that Plaintiff could perform. Doc. 24 at 4-8. The Commissioner states that the Magistrate Judge's analysis at step five is flawed for three (3) reasons: (1) the Magistrate Judge applied an incorrect standard of review to the ALJ's evaluation of medical source opinions; (2) the Magistrate Judge improperly disagreed with the ALJ's credibility determination as to Plaintiff's pain complaints; and (3) the Magistrate Judge improperly found that Plaintiff is incapable of performing any work on a full time basis. Id. For the reasons listed below, the Court sustains the Commissioner's objection to the Magistrate Judge's recommendations at step five of the analysis. The Court **FINDS** that the ALJ's determination that Plaintiff could perform other work available in the national economy, and thus does not have a disability that prevents him from holding any substantial employment, is supported by substantial evidence.

*1. Medical Source Opinions*

When reviewing medical source opinions, the ALJ considers medical source opinions "together with the rest of the relevant evidence" in the record. 20 C.F.R. § 404.1527. Generally, when evaluating medical opinions, the ALJ will give more weight to sources that have personally examined the claimant, sources that have a long term treating relationship with the claimant, sources that have supported their findings with relevant evidence such as laboratory findings, sources that are consistent with the opinion, and sources that are specialists. Id. When a medical source is a treating source, and their opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in

[the] case record, [the ALJ] will give it controlling weight." Id. Importantly, the ALJ is not required to give a treating source opinion controlling weight, and should give a treating source opinion significantly less weight where it "is not supported by clinical evidence or if it is inconsistent with other substantial evidence." Craig, 76 F.3d at 590. The ALJ must, however, "always give good reasons" for the weight accorded to a treating source's opinion. 20 C.F.R. § 404.1527. The ALJ must also explain the weight he gives to the opinions of agency doctors, which are evaluated using the same factors used for other medical sources. Id.

In the R&R, the Magistrate Judge stated that the opinions of Plaintiff's three (3) treating physicians, Dr. Newfield, Dr. Kerner, and Dr. Hansen, should have been given "controlling weight" by the ALJ. Doc. 23 at 41. If the ALJ had done so, reasoned the Magistrate Judge, the opinions of these three (3) physicians led to the conclusion that Plaintiff is unable to perform the jobs described by the vocational expert. Id. at 40. As noted above, however, the ALJ was not required to give the opinions of the treating physicians controlling weight. If these opinions were contradicted by the record or were not supported by clinical evidence, the ALJ could give them less weight as long as he explained his reasons for doing do. See Craig, 76 F.3d at 590. As noted above, the findings of the DDS physicians directly contradicted many of the findings made by these three (3) physicians. See R. at 224, 277, 280, 284-85. The findings of the three (3) treating physicians were also not always consistent with the clinical findings made by Plaintiff's other treating physicians that are included in the record. See R. at 173 (evaluation of Dr. Jeffrey Parsons, noting that Plaintiff's injuries had healed and that he can proceed with physical activity); R. at 141-152 (progress notes of Dr. Kouichi Matsushige). Additionally, none of the three (3) treating physicians included a narrative summary with their evaluation. Id. Notably, all three (3)

DDS physicians included narrative summaries in their reports. See R. at 224, 277, 280, 284-85.

Furthermore, the ALJ explained in his opinion in detail why he did not give controlling weight to the three (3) treating physicians. R. at 21-22. As to Dr. Newfield, the ALJ noted that the limitations included in his evaluation "were attributed, not to [Plaintiff's] depression, but to his complaints of pain," and that the evaluation "is more restrictive than even the limitations complaint of by the claimant. Id. The ALJ additionally noted that Dr. Newfield "provided no narrative to support his 'check-box' conclusions." R. at 22. The ALJ thus concluded that Dr. Newfield's opinions were of limited probative value. Id. The ALJ found that Dr. Hanson "did not provide a medical basis for the pain, nor a nexus between any medical findings in the record and the level of pain that the claimant complains of. . . . [T]he only clinical finding [is] reported as muscle spasms." Id. Thus, the ALJ stated that Dr. Hansen's opinion was of "limited value." Id. The ALJ states that Dr. Kerner's evaluation, which indicated significant limitations, was completed "less than two months" after Plaintiff's second surgery, and further clinical tests completed more recently showed marked improvement. Id. The ALJ thus found Dr. Kerner's assessment to be of limited probative value for the periods before the surgery and after the tests began showing improvement in January, 2004. Id.

Because the ALJ also relied on the opinions of the DDS physicians, he was also required to explain the weight he accorded to these doctors. See 20 C.F.R. § 404.1527. As to Dr. Walter, the DDS mental health physician, the ALJ stated that he gave "significant weight" to his opinion because Dr. Walter "is an expert in the evaluation of disability based on mental health impairments." R. at 21. The ALJ gave "some, but not significant" weight to Dr. Cole and Dr. Longa, DDS physicians who completed physical evaluations of Plaintiff, as "they are also experts

in the evaluation of disability [but] it does not appear that they fully considered claimant's history of spinal surgeries in both the lumbar and cervical areas, and it does not appear they credited his complaints of pain at all." R. at 22.

The Court finds that the ALJ properly and sufficiently explained the weight he accorded to each medical opinion he relied upon in his opinion. The Court additionally finds that the ALJ gave sufficient reasoning as to why he did not give the opinions of the treating physicians controlling weight. The Court emphasizes the limited scope of review of the ALJ's decision, which does not permit the Court to re-weigh the evidence. See Hays, 907 F.2d at 1456. The record as a whole is also consistent with the ALJ's findings. The Court thus **FINDS** that the ALJ's evaluation of medical source opinions is supported by substantial evidence.

### *2. Credibility Determination of Plaintiff's Pain Complaints*

Credibility determinations are left to the ALJ, and will be upheld where they are supported by substantial evidence. See Craig, 76 F.3d at 589. When this determination involves a claimant's subjective claims of pain, these claims "must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 590. After such an impairment is established, the ALJ cannot reject the subjective claim of pain "solely because the available objective evidence does not substantiate . . . the severity and persistence of [the] pain." Id. at 595. Subjective claims of pain may be rejected, however, "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and to the extent to which that impairment can be reasonably expected to cause the pain the claimant alleges." Id.

Here, the ALJ stated that although he found that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms . . . claimant's statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible." R. at 21. The ALJ based this credibility determination on several inconsistencies between Plaintiff's testimony and the record. Id. The Court has reviewed these inconsistencies and finds that the ALJ's analysis is supported by substantial evidence. The evidence supports the ALJ's finding that Plaintiff's statements at the hearing were inconsistent with earlier statements he made to his treating physicians. For example, although Plaintiff stated that his recent surgery had made his pain "worse," he had earlier reported improvement in his pain as a result of that surgery, and clinical tests showed that the surgery was a success. See R. at 286-88. In addition, clinical evidence is also present to support a finding that Plaintiff's injuries sustained April 27, 2002, which Plaintiff alleges triggered his disability, have fully healed. See R. at 173. The Court thus **FINDS** that the ALJ's credibility determination is supported by substantial evidence.

### *3. Whether Plaintiff Could Perform Other Work*

When evaluating whether an individual who does not have an impairment meeting or equaling a listed impairment is capable of performing any work in the national economy, the ALJ must evaluate an individual's residual functional capacity ("RFC"), or the claimant's "ability to do sustained work-related physical and mental activities in a work setting . . . 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p (July 2, 1996); see also 20 C.F.R. § 416.920(e). At step five, the RFC is used to determine whether the claimant can adjust to other work. 20 C.F.R. § 416.920(e) and (g). The ALJ must examine only "functional limitations and

restrictions that result from an individual's medically determinable impairment . . . including the impact of any related symptoms." SSR 96-8p. An RFC is "the *most*" work an individual can do. Id. (emphasis in original). Sedentary work, the type that the ALJ found Plaintiff capable of, "represents a significantly restricted range of work" for individuals who "have very serious functional limitations." SSR 96-9p (July 2, 1996). Sedentary work requires that the individual be able to lift up to ten (10) pounds and do a certain amount of walking and standing occasionally, for no more than two (2) hours of an eight (8) hour workday. Id. An RFC "for less than a full range of sedentary work . . . is expected to be relatively rare" but "does not necessarily equate with a decision of 'disabled.'" SSR 96-9p (July 2, 1996). The ALJ must still consider what other work the claimant can do given their "age, education, and work experience" as well as their functional limitations. Id.

      The Court finds that the ALJ properly performed this analysis. When determining the Plaintiff's RFC, the ALJ found that Plaintiff was limited in his physical abilities. After considering the medical evidence, Plaintiff's own testimony, and the remainder of the record, the ALJ found that Plaintiff was unable to climb or crawl and could only occasionally stoop, kneel, crouch, and balance. R. at 20. The ALJ further found that Plaintiff "is limited to performing work involving simple instructions, simple tasks and [with] few or infrequent changes in the work environment." Id. These limitations are supported by substantial evidence in the record. All physicians who evaluated Plaintiff found that he was somewhat limited in his abilities. The treating physicians found Plaintiff to be markedly limited, while the DDS physicians found Plaintiff to be significantly less limited. The ALJ's determination of Plaintiff's limitations falls somewhere between these two extremes. Notably, the ALJ found Plaintiff to have more physical

limitations than any of the three (3) DDS physicians. This determination is additionally consistent with the remainder of medical evidence in the record, including the clinical findings made by Plaintiff's other treating physicians. See R. at 140-71, 172-82, 183-92. The ALJ also considered Plaintiff's age, Plaintiff's education level, and Plaintiff's past work experience. R. at 23. The ALJ found that Plaintiff was able perform to less than the full range of sedentary work due to his limitations. Id.; R. at 20. The ALJ then asked the vocational expert whether an individual with Plaintiff's "age, education, past relevant work experience, and residual functional capacity," specifically listing all the limitations the ALJ found Plaintiff to have, would be able to adjust to other work available in the national economy. R. at 23, 458. The vocational expert responded that such an individual could work as a laundry sorter or as a food and beverage clerk. R. at 45.

The Court **FINDS** that the ALJ's determination of Plaintiff's ability to perform other work is supported by substantial evidence. The ALJ's determination of Plaintiff's residual functional capacity is fully explained in his opinion and is consistent with the record. In addition, the ALJ's methodology was in accordance with applicable law. The ALJ's hypothetical question accurately described his findings as to these limitations, and the ALJ based his determination on the vocational expert's answer.

## V. CONCLUSION

After reviewing the record, the Court **FINDS** that the ALJ's denial of benefits was supported by substantial evidence. Thus, the Court chooses not to adopt the substantive findings of the R&R. The Court instead **GRANTS** the Commissioner's Motion for Summary Judgement and **DENIES** Plaintiff's Motion for Summary Judgment.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

_____/s/_____<br>
HENRY COKE MORGAN, JR.<br>
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia<br>
March 21, 2008